IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ERIN PYDLEK | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 24-4357 |
| | ) | |
| MARK ANTHONY BREWING, INC. | ) | |
| | ) | |
| | ) | Jury Trial Demanded |
| Defendant. | | |

**COMPLAINT**

Plaintiff Erin Pydlek ("Pydlek" or "Plaintiff") by and through her attorneys, Loftus & Eisenberg, Ltd., and for her cause of action against Defendant Mark Anthony Brewing, Inc., ("Mark Anthony," "Company," or "Defendant") states as follows:

1. March 14, 2023, marked Equal Pay Day, the day into the 2023 the average woman needed to work to make as much as the average man did in 2022. Two of the documented reasons for the persistence of the Gender Pay Gap is the resistance of women to negotiate their own salaries compared to men and the negative backlash women who do negotiate experience.

2. March 14, 2023, also marked the end of Pydlek's four-and-half-year career at Mark Anthony. Pydlek lead and managed the Company's procurement supply chain for all direct materials (packaging and raw materials), in which role she grew the department from one to four team members. Pydlek managed spend estimated between $150,000,000 and $800,000,000 through exponential growth of the seltzer category, enabling the White Claw brand to be the market leader since 2018. She then ensured supply continuity through the volatile supply chain environment during the COVID-19 pandemic. Given her excellent performance, Pydlek asked

1

that Mark Anthony adjust her under-market salary to reflect her contributions just like her male peers. Mark Anthony's leadership instead began to scrutinize her performance and criticize her tone and interpersonal skills. When Pydlek complained that such criticism was sexist, the Company began papering her file. Just weeks later, Mark Anthony replaced Pydlek with a man, offering him the higher title and attendant salary that she had sought in violation of Pydlek's federal and state rights. In further discrimination and retaliation, Mark Anthony then refused to consider her for alternative roles for which she was uniquely qualified.

## Jurisdiction and Venue

3. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Fair Labor Standards Act, 29 U.S.C. § 2015(a)(3); the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq.*; and the Illinois Equal Pay Act, 820 ILCS 112/10. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). Mark Anthony's United States operations are based in this District, where the unlawful conduct alleged in this Complaint occurred.

## Parties

5. Defendant Mark Anthony is one of the largest brewers in the United States, providing brewing facilities and supply chain management for the Mark Anthony Group brands, including White Claw Hard Seltzer, Mike's Hard Lemonade, Cayman Jack, and MCD Drinks.

6. Pydlek now resides in Florida. During the underlying events, Pydlek resided in Chicago, Illinois.

7. Pydlek worked for Mark Anthony from September 2018 until March 2023.

## Factual Allegations

*Pydlek Met and Exceeded Mark Anthony's Reasonable Expectations*

8. Pydlek joined Mark Anthony in September 2018 as the Director of Procurement reporting to then-Senior Vice President of Finance John Sacksteder (male).

9. Pydlek joined Mark Anthony with the skills and experience necessary to succeed developed over a decade in procurement roles, including at Kraft Foods and Diageo.

10. When she joined the Company, Pydlek was one of the first twenty-five employees at Mark Anthony and one of only a handful of women at the director level or above.

11. As the only member of the procurement team at the time, Mark Anthony tasked Pydlek with managing the Company's approximately $150,000,000 in direct material spending.

12. Over her four-and-a-half-year tenure with Mark Anthony, Pydlek discharged all duties assigned to her competently and enjoyed an excellent reputation for the high quality of her work and conscientious devotion to her job.

13. As Sacksteder noted in Pydlek's fiscal year ("FY") 2019 Performance Review, "Erin hit the ground running in Sept[.] and has made a significant impact on the business in a very short time. She has quickly built relationships with all key suppliers and has evaluated current contracts to find new opportunities." He further was "in complete agreement" that Pydlek's strengths were her competitive drive, commitment to winning culture, competence, and curiosity.

14. Mark Anthony awarded her a bonus equivalent to 134% of her eligibility for FY2019 as well as a merit raise.

15. Sacksteder's comments were similarly positive for the FY2020 performance

review, in which he praised Pydlek for her "great work supporting the MA Brewing financial goals and exceeding target" and showing "relentless effort to find cost savings solutions...conducting supplier reviews to hold them accountable to quality and service standards." Sacksteder praised Pydlek for "play[ing] a key role in the success of the team" and for her "passion for the business." He encouraged her to "keep working and you have a great caree[r] ahead."

16. In recognition of her stellar performance in FY2020, Mark Anthony awarded Pydlek a bonus representing $164.9% of her eligibility as well as another merit salary increase.

17. Pydlek continued to grow with the procurement role. At the end of 2020 and into the first quarter of 2021 the seltzer category peaked. Mark Anthony was forecasting over 250 million cases of product for which Pydlek needed to contract for almost $1 billion in materials to support that production with a team of only two managers.

18. However, consumer preferences quickly became apparent, the seltzer category contracted, and Mark Anthony also faced fierce competition from other new brand entrants.

19. With the business decline, Pydlek was required to negotiate the Company out of supply commitments.

20. As Sacksteder noted in Pydlek's FY2021 Performance Review, Pydlek had another "good year." She "did a great job leading many RFP and contract negotiations this year. She is working to create structure in our procurement approach and also building a team to enable tighter control and oversight of our suppliers." He recognized that Pydlek was "very committed and working personally to raise her 'executive presence' and continue growing in our organization." Sacksteder anticipated Pydlek would "continue to grow stronger and stronger in role during FY22."

21. Mark Anthony rewarded Pydlek's performance with an FY2021 bonus representing 160.81% of eligibility in addition to a merit raise.

22. Mark Anthony awarded Pydlek yet another merit raise in November 2021, though Pydlek's title remained unchanged.

23. Pydlek continued to report to Sacksteder, who was by then Company President.

24. Pydlek continued to work at a high level for the Company despite being chronically understaffed.

25. As anticipated by her FY2021 Review and as a part of the Company's Spring 2022 third-party Consulting engagement, Pydlek provided the consulting firm, Senior Vice President of Manufacturing Colin Nolan (male), and Sacksteder with a proposed Procurement Organizational Structure, with increasing incremental resources necessary to develop the procurement function and meet the department's stretch goals.

26. The need for a higher head count became all too apparent when one of Pydlek's reports required maternity leave that June 2022, during which the Company provided only an analyst with no procurement experience.

27. The consultants found Mark Anthony's direct material contract pricing in the 25% most competitive in the Food & Beverage industry and recommended that the procurement team be led by a VP-level position.

28. At the time, Pydlek was the only supply chain organization Director reporting directly to the President, with Sacksteder's other supply chain direct-reports—all men—at the VP level or above.

29. Although Mark Anthony did not provide Pydlek with a performance review for FY 2022 per their policy, on May 31, 2022, Mark Anthony awarded Pydlek a bonus (albeit

5

smaller expressly due to business "challenges") and merit raise effective April 1, 2022.

30. Along with the FY22 Salary Review and Bonus Letter came a striking admonishment meant to chill protected concerted behavior and the discovery of underpayment:

> Renumeration is strictly confidential. Discussing renumeration with other employees, whether it be your own renumeration or someone else's, is a violation of company policy.

31. Although she suspected that her compensation was artificially low compared to her male peers, Pydlek did keep her compensation confidential as warned, wanting to be a team player.

32. Pydlek represented Mark Anthony at the October 2022 Alliance for Women in Beer conference.

*Pydlek Seeks Pay Commensurate with the Market—Like Her Male Peers—and Complains About Sexism in Leadership's Response*

33. By November 2022, Mark Anthony's business had rebounded "back to growth" and was engaging in salary adjustments.

34. Pydlek took the opportunity to request a raise for herself and another woman on her team, Madison Straight, both of whom were underpaid compared to the market for similar roles, by submitting a Salary Adjustment Form and benchmarking letter in support to Human Resources Business Partner Katie Reese.

35. Sacksteder refused Pydlek's well-supported salary adjustment requests, disparaging Pydlek for being so "bold" as to ask for a raise, or words to that effect.

36. In response, Pydlek wrote him a letter noting how boldness is often dissuaded as negative aggression in women but prized in a man, which she believed was impacting her pay at Mark Anthony.

37. Sacksteder apparently took offense to the letter; rebuking Pydlek for "missing the

6

point" of his feedback, or words to that effect, and denying that stereotypes played any role in the decision to continue paying her and Straight under-market wages.

38. Concerned by Sacksteder's reaction, Pydlek sought Nolan's advice. They discussed Sacksteder's feedback as well as Pydlek's worries that unconscious bias against women was affecting that feedback.

39. Thereafter, on November 30, 2022, Pydlek reiterated that she wanted she wanted "to continue to grow the business not only from a profitability perspective, but also help build a positive culture as a mature organization" and shared her "Research on How Female Confidence in the Workplace Can be Perceived Negatively" with Nolan. Some of the research included:

> Research says that assertive women are often seen as bossy and abrasive by their colleagues. And it's holding women back in terms of pay and their career progression. Assertiveness in women is perceived negatively:
> - Women receive "negative personality criticism", such as being called bossy or told to "watch their tone" in around 75% of Performance Reviews. Men on the other hand, rarely do.
> - Women who are assertive or forceful are perceived as 35% less competent than non-assertive women, according to a 2015 VitalSmarts study[.]
> - Women are called bossy in the workplace more often than men are, according to a US Study.
>
> Numerous studies all agree. When a Women shows assertive traits in the workplace, such as by confidently pursuing her goals, her colleagues will label her as abrasive or bossy.
> ….
> **The findings are that a women can't step outside of her traditional role without making waves, or experiencing a backlash:** "To be successful, you must be assertive and confident, but if you are aggressive as a women you are sometimes punished for behaving in ways that are the contrary to the feminine stereotype."
>
> ….
>
> The other side of this is prescriptive bias is when a woman does not fit the role that is traditionally assigned to her and attempts to claim a traditionally male position is seen as breaking the norm. So, when a woman is decisive, she might be perceived as "brusque" and "abrupt". Therefore, for the same kind of leadership behavior, women might be penalized while a man is commended.
>
> This is the problem of "likability", where women who are not assertive and fit the gender stereotype of a woman as being gentle and caring are liked more but not considered as

>leadership material. **On the other hand, women who display traditional "masculine" qualities such as assertiveness, forcefulness, and ambition are labeled as "bitchy", unfeminine and aggressive, and hence generally disliked. In both cases, women are then less likely to be promoted than a man.** Men do not face the same problem, because what is considered "bossy" in a woman are considered leadership qualities in a man.
>
>Sheryl Sandberg in her book "Lean In" cites an experiment conducted at Columbia Business School and New York University by professors Frank Flynn and Cameron Anderson, respectively. They selected the resume of a real-life female entrepreneur who was quite successful and noted for her extroverted personality. The woman's real name, Heidi, was placed on one set of identical resumes, and a man's name, Howard, on another. Half of a group of business school students read one resume, and the other half the other. The result was remarkable. The students rated Heidi and Howard as equally competent. However, Howard was judged to be likable and a good colleague. Heidi, however, was seen as aggressive, selfish and not someone who would be a team player, and who they'd like to work with. **This demonstrated the inherent bias that people carry within about typical gender roles and behaviors, and how men and women are judged by different rules, even when they are equally competent.**
>
>**What can be done?**
>It is important that we are aware of these biases that can exist unknowingly, recognize and acknowledge them. It is no point saying that we are all unbiased and unprejudiced because these are unconscious biases that are shaped by our cultural and social conditioning. For both men and women, it is important to speak out and interrupt if they notice any remarks that demonstrate this kind of prejudice, such as "she is emotional" or that "she is too talkative" or that "she is not very caring", as these can affect how competence is perceived, and these are not labels that would normally be assigned to men in the same situation.

(Emphasis in original.)

40. In response, apparently without seeing the irony, Sacksteder faulted Pydlek for advocating for what she considered adequate pay commensurate with the market, deriding her as "self-serving."

41. Male leaders at Mark Anthony have abrasive communication styles without discipline or threat of loss of employment, including Senior Director Danny Walker.

42. Nevertheless, Pydlek took Nolan and Sacksteder's feedback seriously and worked to soften her demeanor by watching her communication tone and making herself more

8

approachable.

43. Pydlek asked Mark Anthony for leadership coaching resources in order to address the feedback, but no such resources were provided.

44. On information and belief, Mark Anthony failed to investigate Pydlek's complaint of sexism as required by their Code of Conduct.

*Mark Anthony Retaliates Against Pydlek for Complaining About Sexism and Pay Inequity*

45. Just two days after Pydlek raised her concerns that she was being treated unfairly due to her sex, Sacksteder started to document alleged performance deficiencies in an apparent attempt to lay the groundwork for her termination.

46. No warnings or disciplinary notes predating her complaints appeared in her Personnel File.

47. With FY23 performance reviews looming in March 2023, Pydlek emailed Sacksteder a list of her FY23 goal accomplishments and again sought his support developing the maturing procurement function, which included a request for additional resources. Sacksteder never responded.

48. On March 14, 2023, just two weeks later and two weeks before Pydlek's bonus would have been awarded, Mark Anthony announced that Pydlek's Director role had been eliminated and replaced with a Vice President role while all other roles would remain intact.

49. Mark Anthony did not give Pydlek the opportunity to interview for the Vice President Direct Procurement role.

50. Instead of promoting Pydlek such that her compensation and title would be in line with her experience and output, Mark Anthony fired Pydlek and replaced her with a man, Ryan Nied, who had been out of the beverage industry for almost six years.

51. Neid took over Pydlek's job duties.

52. Mark Anthony is now paying Neid more for substantially equivalent work to that Pydlek performed.

53. Nor did Mark Anthony consider Pydlek for other roles at Mark Anthony for which she was qualified, in contrast to others whose roles were eliminated at Mark Anthony but had not engaged in protected conduct.

54. Pydlek learned of open supply chain roles when a recruiter contacted her seeking information about the department, and she saw other Director roles posted to LinkedIn.

55. Although Pydlek is uniquely qualified for the Director of Demand and IBP, and Director, Supply and Material Planning roles, Mark Anthony did not even respond to her applications other than automatic reply, which said that she could expect to hear back in two weeks. Instead, they hired less qualified individuals from outside Mark Anthony who had not engaged in protected conduct.

56. Mark Anthony hired Samuel Jaffe (male) for the Director of Demand and IBP role. Jaffe has only ever held tactical demand planning roles. The Mark Anthony position is his first director level role. Unlike Pydlek, Jaffe had no alcoholic beverage industry experience, so he did not likely understand the three-tier distribution and planning system. Because he had no Mark Anthony experience, he would have to get up to speed on the business and annual planning cycle and to learn about the suppliers and distributors with which the Company works on their supply, network planning, and forecasting process. In contrast, Pydlek could have hit the ground running.

57. For the Director of Supply and Materials Planning role, Mark Anthony hired Ashlee Ahlf, who had two-to-three fewer years of experience in the consumer-packaged goods

10

industry than Pydlek. Unlike Pydlek, Ahlf also lacked alcoholic beverage industry experience, not to mention no Mark Anthony experience. Pydlek, conversely, worked hand-and-hand with this role at the Company for almost 4.5 years.

*Pydlek has Suffered Damages*

58. As a result of Mark Anthony's unlawful treatment, Pydlek has suffered significant wage and financial losses and irreparable damage to her career.

59. Due to Mark Anthony's unlawful treatment, Plaintiff has suffered emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, inconvenience, and other non-pecuniary losses.

60. Pydlek has fully exhausted her administrative remedies related to her civil rights claims. Pydlek timely cross-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR"). She received Notice of the Right to sue, which she provided to the IDHR and opted out of their investigation. This lawsuit followed.

**COUNT I**
**GENDER DISCRIMINATION**
**IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT**

61. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

62. Mark Anthony was an employer under the Act because it employed employees within Illinois, including Pydlek. 775 ILCS 5/2-101(B)(1)(a).

63. The Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*, makes it unlawful for "any employer to refuse to hire, to segregate, to engage in harassment . . . or to act with respect

to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination . . . ." 775 ILCS 5/2-102(a). "Unlawful discrimination" includes discrimination based on sex. 775 ILCS 5/1-103(Q).

64. Mark Anthony violated Pydlek's right to be free from discrimination based on her sex and attendant stereotypes, including by paying her less than her men for similar work, firing her for behavior that men were permitted, replacing her with a man with less current beverage industry experience, and by refusing to consider her for roles for which she was qualified like men are upon the elimination of a role.

65. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

66. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

67. The Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*, makes it unlawful to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, . . . because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act . . . ." 775 ILCS 5/6-101(a).

68. Pydlek engaged in activity protected by the Illinois Human Rights Act's anti-retaliation provision.

69. Mark Anthony took adverse actions against Pydlek because of her protected activities including firing just weeks after she complained about sexism on Equal Pay Day and

refusing to consider her for other roles for which she was qualified as Mark Anthony does for those whose positions have been eliminated but have not engaged in protected conduct.

70. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT III
## GENDER DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

71. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

72. Mark Anthony is an employer covered by Title VII of the Civil Rights Act in that it employs more than 15 employees for each working day in 20 or more weeks in the year in question, including Pydlek. 42 U.S.C. §2000e-2(a)(1).

73. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

74. Mark Anthony violated Pydlek's right to be free from discrimination based on her sex, including by paying her less than men for similar work, firing her for behavior that men were permitted, replacing her with a man with less current beverage industry experience, and by refusing to consider her for roles for which she was qualified like it does for men are upon the elimination of a role.

75. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT IV
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

76. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

77. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, makes it unlawful to retaliate against individuals who oppose practices that violate Title VII. 42 U.S.C. § 2000e-3(a).

78. Pydlek engaged in activity protected by Title VII's anti-retaliation provision when she complained about sexism at Mark Anthony.

79. Mark Anthony took adverse actions against Pydlek because of her protected activities, including firing her just weeks after her protected activity and refusing to consider her for other roles for which she was qualified as Mark Anthony does for those whose positions have been eliminated but have not engaged in protected conduct.

80. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT V
## UNEQUAL PAY
## IN VIOLATION OF THE ILLINOIS EQUAL PAY ACT

81. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count V of this Complaint.

82. In Illinois, "[n]o employer may discriminate between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions." 820 ILCS 112/10(a).

83. Mark Anthony paid Pydlek less than men who performed substantially similar work on jobs the performance of which required substantially similar skill, effort, and responsibility, and which are performed under similar working conditions, including her successor Nied.

84. Mark Anthony acted with malice or reckless indifference to Pydlek's rights.

85. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT VI
## RETALIATION
## IN VIOLATION OF THE ILLINOIS EQUAL PAY ACT

86. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count VI of this Complaint.

87. Mark Anthony was an "employer" under the Illinois EPA as they gainfully employed four or more employees in Illinois, including Pydlek. 820 ILCS 112/5.

88. "Any employer, or agent of an employer, who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his or her employer, or to the Director or his or her authorized representative, that he or she or any employee of the employer has not been paid" equally based on sex "shall be liable to the employee for such legal and equitable relief as may be appropriate." 820 ILCS 112/35(b).

89. Pydlek engaged in activity protected by Illinois Equal Pay Act when she complained that women were underpaid compared to their male peers at Mark Anthony.

90. Mark Anthony took adverse actions against Pydlek as a result of her protected activities, firing her on Equal Pay Day and refusing to consider her for other roles for which she was qualified.

91. Mark Anthony acted with malice or reckless indifference to Pydlek's rights.

92. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT VII
## UNEQUAL PAY
## IN VIOLATION OF THE EQUAL PAY ACT

93. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count VII of this Complaint.

94. The Equal Pay Act ("EPA") "prohibits discrimination by employers on the basis of sex in the wages paid for "equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions." 29 CFR § 1620.13(a).

95. "If a person of one sex succeeds a person of the opposite sex on a job at a higher rate of pay than the predecessor, and there is no reason for the higher rate other than difference in gender, a violation as to the predecessor is established and that person is entitled to recover the difference between his or her pay and the higher rate paid the successor employee." 29 CFR § 1620.13(b)(4).

96. Mark Anthony paid Pydlek less than men who performed substantially equal work on jobs the performance of which required substantially similar skill, effort, and responsibility, and which are performed under similar working conditions, including her successor Nied.

97. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

## COUNT VIII
## RETALIATION
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

98. Pydlek realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count VIII of this Complaint.

99. Section 15(a)(3) of the Fair Labor Standards Act ("FLSA") states that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

100. Pydlek engaged in activity protected by FLSA when she made a good faith complaint that women were underpaid compared to their male peers at Mark Anthony in violation of the EPA.

101. Mark Anthony took adverse actions against Pydlek as a result of her protected activities, firing her on Equal Pay Day and refusing to consider her for other roles for which she was qualified as Mark Anthony does for those whose positions have been eliminated but have not engaged in protected conduct.

102. Pydlek has suffered damages as a result of Mark Anthony's unlawful actions.

**WHEREFORE**, Pydlek requests the entry of judgment in her favor, and against Defendant as follows:

  a. Declare that the acts and conduct of Defendant are unlawful and violate the Title VII, EPA, FLSA, IHRA, and IEPA;

b. Award Plaintiff the value of all compensation and benefits lost because of Defendant's unlawful conduct;

c. Award Plaintiffs the value of all compensation and benefits she will lose in the future because of Defendant's unlawful conduct;

d. Award Plaintiff compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

e. Award Plaintiff prejudgment interest;

f. Award Plaintiff punitive damages as appropriate under federal law and the Illinois Equal Pay Act;

g. Award Plaintiff liquidated damages under the Illinois Equal Pay Act, and the FLSA;

h. Award Plaintiff attorneys' fees and costs; and

i. Award Plaintiff such other make-whole equitable, injunctive, and legal relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

By: */s/ Gail S. Eisenberg*
One of Plaintiff's Attorneys

Gail S. Eisenberg
David A. Eisenberg
Alexander N. Loftus
LOFTUS & EISENBERG LTD.

161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
gail@loftusandeisenberg.com
david@loftusandeisenberg.com
alex@loftusandeisenberg.com

Dated: May 28, 2024